THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY CLAY PONDER, Defendant-Appellant.

(No. 57073; )

First District (5th Division)—March 2, 1973.

614

John J. Connors, of Arlington Heights, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This is an appeal from the denal of defendant's Amended Post-Conviction Petition which alleged that his pleas of guilty had been induced by his mother after the trial judge had influenced her to convince her son to plead guilty.

On July 10, 1962, under indictment for two different murders and a robbery, defendant changed his pleas from not guilty to guilty to the lesser included offenses of voluntary manslaughter and to the robbery charge. He was represented at this time by John Biggs, a privately retained counsel. The court accepted the guilty pleas and on July 23, 1962, sentenced defendant to concurrent terms of 2 to 20 years on all three indictments.

On December 9, 1966, defendant filed a *pro se* petition under the Post-Conviction Act (Ill. Rev. Stat. 1965, ch. 38, par. 122), alleging several

violations of his constitutional rights. The public defender filed his appearance on behalf of defendant. On March 16, 1967, this petition was denied after an evidentiary hearing, and the public defender filed a timely Notice of Appeal to the Supreme Court. Almost two years later, the public defender and a subsequently appointed counsel both withdrew as defense counsel, and the next appointed attorney filed a successful motion to remand the cause to the trial court with leave to amend the petition.

On October 29, 1970, an evidentiary hearing was held on defendant's Amended Petition which raised two issues: (1) defendant's pleas of guilty were coerced and were, therefore, obtained in violation of his due process rights; and (2) the delay in adjudicating defendant's post-conviction claims was a denial of his due process rights. At this hearing, testimony was taken of defendant, defendant's mother, and his original attorney, Mr. Biggs.

Defendant testified that on July 10, 1962, he appeared in court and told his attorney that he wanted to plead not guilty. His attorney informed the judge of defendant's intention, and the judge then beckoned defendant's mother out of the public part of the courtroom up to the bench. He heard the judge tell his mother that he wanted to give defendant a break because of his youth (18 years old) and that she should speak to her son. The judge sent defendant, his attorney, and his mother with a bailiff to the jury room so that they could have a private discussion. His attorney told him that since his alibi was weak and a co-defendant was going to testify against him, his case didn't look too good and that it would be better for him to plead guilty. His mother told him that she was being harassed at home by the police and that he should go ahead and plead guilty because she had talked with the judge and believed he would be lenient. However, defendant remained firm in his intent to plead not guilty.

The three of them returned to the courtroom and defendant's mother, his attorney, and the attorneys for his co-defendants were standing before the bench when Mr. Biggs told the judge of the outcome of the discussion. He heard the judge again tell his mother that he didn't want to be harsh because defendant was young and had a chance to be rehabilitated. The judge sent them back to the jury room, but this second time the attorneys for the co-defendants were present, also. These other attorneys told defendant that they had handled similar cases and that a 40-to-60-year sentence was a good deal. When defendant told them he "wasn't going to take that," they "offered" a 14-to-25-year sentence. He again refused, but said he would accept a 1-to-10-year term. When they said that a 20-year sentence with a 2- or 3-year minimum was the best

he could do, defendant replied that he wouldn't accept it because they had no authority to offer it. He said he might accept it if the judge would give him some assurance that the 2- or 3-to-20-year term was all he would get. His mother again tried to convince him to plead guilty, but he refused. One of the co-defendant's attorneys also tried to have defendant sign a jury waiver, but he refused to do that, also.

They all returned to open court, and when the judge was informed that defendant still intended to plead not guilty, he spoke again with defendant's mother, saying, "Lady, I am trying to give this guy a chance." This time he sent the state's attorney to the jury room along with all the others who had been present at the previous discussions. The state's attorney told defendant that if he pleaded guilty, the judge would sentence him to 20 years with a 2- or 3-year minimum. Defendant's mother was almost hysterical and tried very hard to induce him to plead guilty. Everyone seemed to be talking at the same time, and it was hard for defendant to distinguish one speaker from another.

They returned to court for the last time, and the trial judge explained to defendant that he had the right to be tried by a jury. Defendant orally requested a bench trial, but he never signed a jury waiver. When defendant made a motion to change his pleas from not guilty to guilty to the reduced charges of voluntary manslaughter on the murder charges, the judge informed him of the possible penalty and asked him if he persisted in his guilty pleas. When defendant responded affirmatively, the judge asked him if he was pleading guilty because he was, in fact, guilty. When defendant again replied affirmatively, the court accepted the pleas. The court went through a similar procedure when defendant entered his guilty plea to the robbery charge. The state recommended a 10-to-20-year sentence, but the court sentenced defendant to a term of 2 to 20 years.

Defendant was silent throughout the whole procedure from the time the court admonished him as to the consequences of a guilty plea because everyone had told him to plead guilty and then say nothing. After he was sentenced, he complained to his attorney about the fact that the state's attorney had told him he would recommend a 2-or-3-year minimum but then had actually recommended a 10-year minimum. His attorney, however, told him not to worry because he was going to appeal the conviction.

Defendant went to the penitentiary and did not complain about his conviction until four years later when he filed a Post-Conviction Petition.

Mr. Biggs testified that on July 10, 1962, he explained to defendant that he didn't think defendant could be acquitted on all three charges, and that he would see what kind of disposition he could get. He had a

conference with the judge and the state's attorney, at which time the judge agreed to go along with the state's prior recommendation of 5 to 20 years. He explained the possible penalties involved to defendant, telling him that one of the alternatives was the death penalty, but that the state's recommendation would be 5 to 20 years if he pleaded guilty to a reduced charge of voluntary manslaughter. He then spoke with defendant's mother about what the state had recommended, and asked her to speak with her son. He was in the conference room when defendant and his mother were arguing about the plea, and he heard defendant insist that he wanted to go to trial. No one else was present at the conference. He did not remember three such conferences, but he believed that there could have been a second one. He told defendant that he was willing to go to trial, and at that point, defendant changed his mind and decided to plead guilty. He did not recall seeing the judge speak with defendant's mother; he did not coerce defendant's mother to speak with defendant; and he did not force defendant to plead guilty.

From July 10, 1962, until the time of the evidentiary hearing on the amended petition, defendant made no complaints to him concerning his conviction or sentence.

Sally Johnson, defendant's mother, testified that she was present on July 10, 1962, when her son pleaded guilty to several charges. The judge asked her to step up to the bench and told her to first speak with the lawyers and see what could be worked out and then to speak to her son. At the conference with the attorneys, the state's attorney told her that he would combine all the charges into one and that her son would be home in at least a year's time if she could talk him into pleading guilty. No one ever mentioned a specific sentence to her. She spoke to her son and asked him to change his plea. At first he refused, but then he changed his mind and said that he would do it for her. Mr. Biggs and the state's attorney were present at this conference. They all came back to the courtroom, and Mr. Biggs informed the court that defendant would plead guilty.

The stipulated testimony of Mr. Tucker, the attorney for one of the co-defendants, was that there had been a conversation between himself and all the defendants in the case, including defendant Ponder, during which time Mr. Biggs was also present. However, he did not remember whether the conference took place on the day defendant pleaded guilty or whether defendant's mother had been present. He never had a conference alone with defendant or with defendant and his mother. He did not recollect the judge speaking with defendant's mother with respect to defendant's entering a guilty plea.

The court was informed, by counsel for petitioner, that Mr. Gill, the

prosecutor at the time defendant had pleaded guilty, remembered something about those proceedings, but did not remember enough to be able to swear to anything as to what transpired at that time.

During the hearing on defendant's Post-Conviction Petition, the trial judge stated that although the issue could be presented on appeal, any testimony or argument with respect to the second point raised in defendant's amended petition, that of the violation of defendant's due process rights due to the lengthy delay in adjudicating his post-conviction claims, would not be considered. The judge refused to allow defendant to testify as to the reason he changed his plea or what effect his mother's persuasion had on him, and refused to allow defendant's mother to testify as to what effect her conversation with the judge had upon her.

At the end of the testimony and after closing arguments, the court concluded that defendant had known what he was charged with, had known the nature of the charges, and had received a sentence which was, in fact, less than that which the state had recommended. Finding that defendant had received a fair trial, the court denied defendant's Amended Post-Conviction Petition, and defendant now appeals from that decision.

Defendant's Amended Post-Conviction Petition alleged that his due process rights had been violated because his guilty pleas had been coerced, being imposed upon him by his mother at the insistence of the trial judge. Defendant now argues that these allegations had been proved at the hearing on his petition, and that the trial judge erred in his decision.

We find that there has been no deprivation of defendant's constitutional rights. At the hearing on his petition, defendant's own testimony was that three "offers" had been made to him—40 to 60 years, 14 to 25 years, and 2 or 3 to 20 years. He refused the first two offers, but told his attorney that he might accept the third if the judge would give him some assurance that the sentence would actually be 2 to 20 years. After such assurance was given to him by the state's attorney, defendant changed his pleas, and the court accepted them only after defendant replied that he was pleading guilty because he was, in fact, guilty of the offenses charged.

■■ Despite any discussions with his mother or any attorneys, we see no coercion in this situation, only an attempt by defendant to get the best possible deal for himself. He had been advised that a co-defendant was going to testify against him and that his conviction seemed likely. According to defendant's testimony, he thought he was going to be sentenced to a term of 2 to 20 years, and according to Mr. Biggs' testimony, defendant was told that the state's recommendation would be 5 to 20

years. Since defendant was sentenced to 2 to 20 years, he either received the sentence he expected or a lesser one. In any event, the issue of whether defendant's guilty pleas were coerced rested upon the credibility of the witnesses, and this issue was a matter for the determination of the trier of fact. (*People v. Bratu*, 46 Ill.2d 143, 262 N.E.2d 921.) Defendant has not established that the trial court's decision was manifestly erroneous, and we will not, therefore, disturb that decision on review. *People v. Watson*, 50 Ill.2d 234, 278 N.E.2d 79.

■■ Defendant also urges that the trial judge's initiation of the plea-bargaining process was a flagrant form of judicial coercion, in violation of his constitutional rights. Although Supreme Court Rule 402(d)(1) (Ill. Rev. Stat. 1971, ch. 110A, par. 402(d)(1)) now provides that "the trial judge shall not initiate plea discussions," such rule was not in effect at the time in question, and, therefore, is not applicable.

■■ Defendant lastly contends that the trial court erred in refusing to permit defendant to testify as to why he pleaded guilty or to the influence his mother had upon him. We find no error in this evidentiary ruling. The trial court allowed defendant to testify as to the facts surrounding his pleas, that he had three conferences during which his mother and others tried to convince him to plead guilty, and defendant's attorney was allowed to argue from these facts that defendant's mother had had a persuasive effect on defendant's decision to change his plea. Therefore, despite the court's exclusion of any conclusions on the part of defendant or his mother, the court did allow and take into consideration evidence and argument specifically on point with the allegations in defendant's petition.

The judgment of the circuit court is affirmed.

Affirmed.

DRUCKER, P. J., and LORENZ, J., concur.